# EXHIBIT C

October 21, 2016

## GUARANTY OF RECOURSE OBLIGATIONS

This **GUARANTY OF RECOURSE OBLIGATIONS** (this "**Guaranty**") is executed as of October 21, 2016 by **WILLIAM KORNBLUTH**, an individual, having an address at 57444 Bandera Road, Yucca Valley, California 92284 and **CHERYL TYLER**, an individual, having an address at 302 W. Bay Area Boulevard, Webster, Texas 77598 (whether one or more collectively referred to as "**Guarantor**") , for the benefit of **RIALTO MORTGAGE FINANCE, LLC**, a Delaware limited liability company, having an address at 600 Madison Avenue, 12th Floor, New York, New York 10022 (together with its successors and assigns, "**Lender**").

### WITNESSETH:

**WHEREAS**, pursuant to that certain Promissory Note, dated of even date herewith, executed by **KORNBLUTH TEXAS, LLC**, a Texas limited liability company ("**Borrower**") and payable to the order of Lender in the original principal amount of **EIGHT MILLION THREE HUNDRED FIFTY THOUSAND AND 00/100 DOLLARS ($8,350,000.00)** (together with all renewals, modifications, increases and extensions thereof, the "**Note**"), Borrower has become indebted, and may from time to time be further indebted, to Lender with respect to a loan (the "**Loan**") which is made pursuant to that certain Loan Agreement, dated of even date herewith, between Borrower and Lender (as the same may be amended, modified, supplemented, replaced or otherwise modified from time to time, the "**Loan Agreement**");

**WHEREAS**, Lender is not willing to make the Loan, or otherwise extend credit, to Borrower unless Guarantor unconditionally guarantees payment and performance to Lender of the Guaranteed Obligations (as herein defined) in accordance with the terms and conditions of this Guaranty;

**WHEREAS**, Guarantor is the owner of a direct or indirect interest in Borrower, and Guarantor will directly benefit from Lender's making the Loan to Borrower; and

**WHEREAS**, capitalized terms used but not otherwise defined herein shall have the meanings ascribed to such terms in the Loan Agreement.

**NOW, THEREFORE**, as an inducement to Lender to make the Loan to Borrower and to extend such additional credit as Lender may from time to time agree to extend under the Loan Documents, and for other good and valuable consideration, the receipt and legal sufficiency of which are hereby acknowledged, the parties do hereby agree as follows:

## ARTICLE I
## NATURE AND SCOPE OF GUARANTY

Section 1.1    (a)    Guarantor hereby irrevocably and unconditionally guarantees to Lender and its successors and assigns the payment and performance of the Guaranteed Obligations as and when the same shall be due and payable, whether by lapse of time, by acceleration of maturity or otherwise.  Guarantor hereby irrevocably and unconditionally

covenants and agrees that it is liable for the Guaranteed Obligations as a primary obligor. As used herein, the term "**Guaranteed Obligations**" shall mean all obligations and liabilities of Borrower for which Borrower shall be personally liable pursuant to Section 8.6 of the Loan Agreement.

(b) Notwithstanding anything to the contrary in this Guaranty or in any of the other Loan Documents, Lender shall not be deemed to have waived any right which Lender may have under Section 506(a), 506(b), 1111(b) or any other provisions of the Bankruptcy Code to file a claim for the full amount of the Debt or to require that all collateral shall continue to secure all of the Obligations owing to Lender in accordance with the Loan Documents.

Section 1.2   It is expressly understood and agreed that this is a continuing guaranty and that the obligations of Guarantor hereunder are and shall be absolute under any and all circumstances, without regard to the validity, regularity or enforceability of the Note, the Loan Agreement, the Security Instrument, or the other Loan Documents, a true copy of each of said documents Guarantor hereby acknowledges having received and reviewed.

Section 1.3   Any indebtedness of Borrower to Guarantor now or hereafter existing (including, but not limited to, any rights to subrogation Guarantor may have as a result of any payment by Guarantor under this Guaranty), together with any interest thereon, shall be, and such indebtedness is, hereby deferred, postponed and subordinated to the prior payment in full of the Debt.  Until payment in full of the Debt (and including interest accruing on the Note after the commencement of a proceeding by or against Borrower under the Bankruptcy Reform Act of 1978, as amended, 11 U.S.C. Sections 101 et seq., and the regulations adopted and promulgated pursuant thereto (collectively, the "**Bankruptcy Code**") which interest the parties agree shall remain a claim that is prior and superior to any claim of Guarantor notwithstanding any contrary practice, custom or ruling in cases under the Bankruptcy Code generally), Guarantor agrees not to accept any payment or satisfaction of any kind of indebtedness of Borrower to Guarantor and hereby assigns such indebtedness to Lender, including the right to file proof of claim and to vote thereon in connection with any such proceeding under the Bankruptcy Code, including the right to vote on any plan of reorganization.  Further, if Guarantor shall comprise more than one person, firm or corporation, Guarantor agrees that until such payment in full of the Debt, (a) no one of them shall accept payment from the others by way of contribution on account of any payment made hereunder by such party to Lender, (b) no one of them will take any action to exercise or enforce any rights to such contribution, and (c) if any of Guarantor should receive any payment, satisfaction or security for any indebtedness of Borrower to any of Guarantor or for any contribution by the others of Guarantor for payment made hereunder by the recipient to Lender, the same shall be delivered to Lender in the form received, endorsed or assigned as may be appropriate for application on account of, or as security for, the Debt and until so delivered, shall be held in trust for Lender as security for the Debt.

Section 1.4   Guarantor agrees that, with or without notice or demand, Guarantor will reimburse Lender, to the extent that such reimbursement is not made by Borrower, for all reasonable out-of-pocket expenses (including counsel fees) incurred by Lender in connection with the collection of the Guaranteed Obligations or any portion thereof or with the enforcement of this Guaranty.

confidential

Section 1.5     All moneys available to Lender for application in payment or reduction of the Debt may be applied by Lender in such manner and in such amounts and at such time or times and in such order and priority as Lender may see fit to the payment or reduction of such portion of the Debt as Lender may elect.

Section 1.6     Guarantor hereby waives notice of the acceptance hereof, presentment, demand for payment, protest, notice of protest, or any and all notice of non-payment, non-performance or non-observance, or other proof, or notice or demand, whereby to charge Guarantor therefor.

Section 1.7     Guarantor further agrees that the validity of this Guaranty and the obligations of Guarantor hereunder shall in no way be terminated, affected or impaired (a) by reason of the assertion by Lender of any rights or remedies which it may have under or with respect to either the Note, the Loan Agreement, the Security Instrument, or the other Loan Documents, against any person obligated thereunder or against the owner of the Property, or (b) by reason of any failure to file or record any of such instruments or to take or perfect any security intended to be provided thereby, or (c) by reason of the release or exchange of any property covered by the Security Instrument or other collateral for the Loan, or (d) by reason of Lender's failure to exercise, or delay in exercising, any such right or remedy or any right or remedy Lender may have hereunder or in respect to this Guaranty, or (e) by reason of the commencement of a case under the Bankruptcy Code by or against any person obligated under the Note, the Loan Agreement, the Security Instrument or the other Loan Documents, or the death of any Guarantor, or (f) by reason of any payment made on the Debt or any other indebtedness arising under the Note, Loan Agreement, the Security Instrument or the other Loan Documents, whether made by Borrower or Guarantor or any other person, which is required to be refunded pursuant to any bankruptcy or insolvency law; it being understood that no payment so refunded shall be considered as a payment of any portion of the Debt, nor shall it have the effect of reducing the liability of Guarantor hereunder.  It is further understood, that if Borrower shall have taken advantage of, or be subject to the protection of, any provision in the Bankruptcy Code, the effect of which is to prevent or delay Lender from taking any remedial action against Borrower, including the exercise of any option Lender has to declare the Debt due and payable on the happening of any default or event by which under the terms of the Note, the Loan Agreement, the Security Instrument or the other Loan Documents, the Debt shall become due and payable, Lender may, as against Guarantor, nevertheless, declare the Debt due and payable and enforce any or all of its rights and remedies against Guarantor provided for herein.

Section 1.8     Guarantor further covenants that this Guaranty shall remain and continue in full force and effect as to any modification, extension or renewal of the Note, the Loan Agreement, the Security Instrument, or any of the other Loan Documents, that Lender shall not be under a duty to protect, secure or insure any security or lien provided by the Security Instrument or other such collateral, and that other indulgences or forbearance may be granted under any or all of such documents, all of which may be made, done or suffered without notice to, or further consent of, Guarantor.

Section 1.9     This is a guaranty of payment and not of collection and upon any default of Borrower under the Note, the Loan Agreement, the Security Instrument or the other Loan Documents, Lender may, at its option, proceed directly and at once, without notice, against

confidential

Guarantor to collect and recover the full amount of the liability hereunder or any portion thereof, without proceeding against Borrower or any other person, or foreclosing upon, selling, or otherwise disposing of or collecting or applying against any of the mortgaged property or other collateral for the Loan.  Guarantor hereby waives the pleading of any statute of limitations as a defense to the obligation hereunder.

Section 1.10   The Guaranteed Obligations and the liabilities and obligations of the Guarantor to Lender hereunder shall not be reduced, discharged or released because of or by reason of any existing or future right of offset, claim or defense of Borrower or Guarantor against Lender, or any other party, or against payment of the Guaranteed Obligations, whether such right of offset, claim or defense arises in connection with the Guaranteed Obligations (or the transactions creating the Guaranteed Obligations) or otherwise.

## ARTICLE II
## REPRESENTATIONS AND WARRANTIES

Section 2.1   Each Person constituting a Guarantor hereby warrants and represents unto Lender that (i) any and all balance sheets, net worth statements and other financial data which have heretofore been given or may hereafter be given to Lender with respect to Guarantor did or will at the time of such delivery fairly and accurately present the financial condition of Guarantor, (ii) neither Guarantor nor any managing member, general partner or controlling stockholder of the Guarantor is currently a debtor in any bankruptcy, reorganization, insolvency or similar proceeding, (iii) no material adverse change in the financial condition of Guarantor or any managing member, general partner, trustee or controlling stockholder of Guarantor has occurred between the respective dates of the financial statements which were furnished to the Lender relating to such persons and the date hereof, (iv) the financial statements of Guarantor (and those of its members, general partners, trustees or controlling stockholder, as the case may be) furnished to the Lender pursuant to the commitment letter issued by Lender and accepted by Borrower in connection with the Loan, reflect in each case a positive net worth as of the date thereof, (v) Guarantor is not presently insolvent, and entering into this Guaranty will not render the Guarantor insolvent and (vi) after the Loan is made and this Guaranty is executed and delivered, Guarantor will have sufficient working capital to pay all of Guarantor's outstanding debts as they come due.  Guarantor further represents, warrants and covenants that, throughout the term of the Loan, Guarantor shall not reduce or deplete its net worth or liquidity in an effort to avoid its obligations (or contingent obligations) under this Guaranty.  As used in this Guaranty, the term "insolvent" means that the sum total of all of an entity's liabilities (whether secured or unsecured, contingent or fixed, or liquidated or unliquidated) is in excess of the value of all of such entity's non exempt assets, i.e., all of the assets of the entity that are available to satisfy claims of creditors.

Section 2.2   Guarantor (and its representative, executing below, if any) has full power, authority and legal right to execute this Guaranty and to perform all its obligations under this Guaranty.

Section 2.3   This Guaranty is a legal and binding obligation of Guarantor and is enforceable against Guarantor in accordance with its terms, except as limited by bankruptcy, insolvency or other laws of general application relating to the enforcement of creditors' rights.

3121436 v5 Guaranty of Recourse Obligations - Webster, TX 4

confidential

## ARTICLE III
## FINANCIAL COVENANTS

Section 3.1  (a) Until all of the Obligations and the Guaranteed Obligations have been paid in full, each Person constituting a Guarantor (i) shall collectively maintain (x) a Combined Net Worth (hereinafter defined) of not less than $8,350,000.00 and (y) Combined Liquid Assets (hereinafter defined) of not less than $300,000.00 (collectively, the "**Financial Covenants**"), (ii) within forty-five (45) days following the end of each calendar quarter, shall deliver to Lender, with respect to the prior calendar quarter, unaudited quarterly and year-to-date statements of income and expense and cash flow prepared on a cash basis for such Guarantor, together with a balance sheet as of the end of such prior calendar quarter for such Guarantor, together with a certificate of such Guarantor (A) setting forth in reasonable detail such Guarantor's Net Worth and Liquid Assets as of the end of such prior calendar quarter and based on the foregoing quarterly financial statements, and (B) certifying that such quarterly financial statements are true, correct, accurate and complete in all material respects and fairly present the financial condition of such Guarantor in a manner consistent with the Approved Accounting Standard, and (iii) within ninety (90) days following the end of each calendar year, shall deliver to Lender a complete copy of such Guarantor's annual financial statements prepared and reviewed by an independent certified public accountant reasonably acceptable to Lender in accordance with the Approved Accounting Standard, including statements of income and expense and cash flow and a balance sheet for such Guarantor, together with a certificate of such Guarantor (A) setting forth in reasonable detail such Guarantor's Net Worth and Liquid Assets as of the end of such prior calendar year and based on such annual financial statements, and (B) certifying that such annual financial statements are true, correct, accurate and complete in all material respects and fairly present the financial condition of such Guarantor.

(b) No Person constituting a Guarantor shall, at any time while a default in the payment of the Guaranteed Obligations has occurred and is continuing, either (i) enter into or effectuate any transaction with any Affiliate which would reduce the Net Worth of such Guarantor, including, without limitation, the payment of any dividend or distribution to a shareholder, partner or member as applicable, or the redemption, retirement, purchase or other acquisition for consideration of any stock or other ownership interest in such Guarantor, or (ii) sell, pledge, mortgage or otherwise transfer to any Person any of such Guarantor's assets, or any interest therein, in each case on terms materially less favorable than would be obtained in an arms-length transaction.

As used herein, the following terms shall have the respective meanings set forth below:

"**Approved Accounting Standard**" shall mean GAAP or so-called "income tax basis" or "cash basis" of accounting or such other accounting standard reasonably acceptable to Lender, consistently applied.

"**GAAP**" shall mean generally accepted accounting principles, consistently applied.

"**Combined Liquid Assets**" shall mean the sum of the Liquid Assets of each Guarantor.

"**Combined Net Worth**" shall mean the sum of the Net Worth of each Guarantor.

"**Liquid Assets**" shall mean any of the following, but only to the extent owned individually, free of all security interests, liens, pledges, charges or any other encumbrance: (a) cash, (b) certificates of deposit (with a maturity of two years or less) issued by, or savings account with, any bank or other financial institution reasonably acceptable to Lender or (c) marketable securities listed on a national or international exchange reasonably acceptable to Lender, marked to market.

"**Net Worth**" shall mean, as of a given date, (i) a Guarantor's total assets as of such date less (ii) such Guarantor's total liabilities as of such date, determined in accordance with the Approved Accounting Standard.

## ARTICLE IV
## MISCELLANEOUS

Section 4.1   Each reference herein to Lender shall be deemed to include its successors and assigns, to whose favor the provisions of this Guaranty shall also inure.  Each reference herein to Guarantor shall be deemed to refer to each and every person or entity comprising a Guarantor from time to time, as the sense of a particular provision may require, and to include the heirs, executors, administrators, legal representatives, successors and assigns of Guarantor, all of whom shall be bound by the provisions of this Guaranty.

Section 4.2   If Guarantor is a partnership, the agreements herein contained shall remain in force and applicable, notwithstanding any changes in the individuals comprising the partnership, and the term "Guarantor," as used herein, shall include any alternate or successor partnership, but any predecessor partnership and their partners shall not thereby be released from any liability. If Guarantor is a corporation or limited liability company, the agreements contained herein shall remain in full force and applicable notwithstanding any changes in the shareholders or members comprising, or the officers and directors or managers relating to, the corporation or limited liability company, and the term "Guarantor" as used herein, shall include any alternative or successor corporation or limited liability company, but any predecessor corporation or limited liability company shall not be relieved of liability hereunder.

Section 4.3   Guarantor's liability under this Guaranty shall be in addition to any liability of Guarantor under any other guaranty or indemnity delivered by Guarantor in connection with the Loan.

Section 4.4   If Guarantor consists of more than one Person, the obligations of each such Person or party shall be joint and several.

Section 4.5   All understandings, representations and agreements heretofore had with respect to this Guaranty are merged into this Guaranty which alone fully and completely expresses the agreement of Guarantor and Lender.

Section 4.6   **GUARANTOR HEREBY WAIVES, TO THE FULLEST EXTENT PERMITTED BY LAW, THE RIGHT TO TRIAL BY JURY IN ANY ACTION, PROCEEDING OR COUNTERCLAIM, WHETHER IN CONTRACT, TORT OR OTHERWISE, RELATING DIRECTLY OR INDIRECTLY TO THE LOAN EVIDENCED BY THE NOTE, THE APPLICATION FOR THE LOAN EVIDENCED BY**

THE NOTE, THE NOTE, THE LOAN AGREEMENT, THE SECURITY INSTRUMENT, THIS GUARANTY OR THE OTHER LOAN DOCUMENTS OR ANY ACTS OR OMISSIONS OF LENDER, ITS OFFICERS, EMPLOYEES, DIRECTORS OR AGENTS IN CONNECTION THEREWITH.

Section 4.7    This Guaranty may be executed in one or more counterparts by some or all of the parties hereto, each of which counterparts shall be an original and all of which together shall constitute a single agreement of Guaranty.  The failure of any party hereto to execute this Guaranty, or any counterpart hereof, shall not relieve the other signatories from their obligations hereunder.

Section 4.8    This Guaranty may not be modified, amended, waived, extended, changed, discharged or terminated orally or by any act or failure to act on the part of Lender or Borrower, but only by an agreement in writing signed by the party against whom enforcement of any modification, amendment, waiver, extension, change, discharge or termination is sought.

THE WRITTEN GUARANTY REPRESENTS THE FINAL AGREEMENT BETWEEN THE PARTIES HERETO AND MAY NOT BE CONTRADICTED BY EVIDENCE OF PRIOR, CONTEMPORANEOUS OR SUBSEQUENT ORAL AGREEMENTS OF THE PARTIES HERETO. THERE ARE NO UNWRITTEN ORAL AGREEMENTS BETWEEN THE PARTIES HERETO.

Section 4.9    (a) THIS AGREEMENT AND THE OBLIGATIONS ARISING HEREUNDER SHALL BE GOVERNED BY, AND CONSTRUED IN ACCORDANCE WITH, THE LAWS OF THE STATE OF TEXAS APPLICABLE TO CONTRACTS MADE AND PERFORMED IN SUCH STATE (WITHOUT REGARD TO PRINCIPLES OF CONFLICT LAWS) AND ANY APPLICABLE LAW OF THE UNITED STATES OF AMERICA.

(b)    ANY LEGAL SUIT, ACTION OR PROCEEDING AGAINST LENDER OR GUARANTOR ARISING OUT OF OR RELATING TO THIS GUARANTY SHALL AT LENDER'S OPTION BE INSTITUTED IN ANY FEDERAL OR STATE COURT IN THE CITY OF NEW YORK, COUNTY OF NEW YORK, PURSUANT TO TITLE 14 SECTION 5-1402 OF THE NEW YORK GENERAL OBLIGATIONS LAW, AND GUARANTOR WAIVES ANY OBJECTIONS WHICH IT MAY NOW OR HEREAFTER HAVE BASED ON VENUE AND/OR FORUM NON CONVENIENS OF ANY SUCH SUIT, ACTION OR PROCEEDING, AND GUARANTOR HEREBY IRREVOCABLY SUBMITS TO THE JURISDICTION OF ANY SUCH COURT IN ANY SUIT, ACTION OR PROCEEDING.

[REMAINDER OF PAGE INTENTIONALLY LEFT BLANK]

confidential

      IN WITNESS WHEREOF, Guarantor has duly executed this Guaranty as of the date first above set forth.

*/s/ William Kornbluth*
William Kornbluth, an individual

_____
Cheryl Tyler, an individual

GSB:8095152.2 [39643.00300]

3121436 v2 Guaranty of Recourse Obligations - Webster, TX   8

confidential

confidential

    IN WITNESS WHEREOF, Guarantor has duly executed this Guaranty as of the date first above set forth.

_____
William Kornbluth, an individual

*[signature: Cheryl M Tyler]*
Cheryl Tyler, an individual

3121436 Guaranty of Recourse Obligations - Webster, TX

confidential